**COX & SMITH INCORPORATED,**
Appellant,

v.

**Mary Catherine COOK, Appellee.**

No. 04–96–00872–CV.

Court of Appeals of Texas,
San Antonio.

May 6, 1998.

Rehearing Overruled July 6, 1998.

Thomas H. Crofts, Jr., Crofts, Callaway & Jefferson, P.C., Susan Stone, Ramon D. Bissmeyer, Foster, Heller & Kilgore, P.C., San Antonio, for appellant.

Tim Mahoney, Austin, Kala S. Dumont, Gaul & Dumont, San Antonio, Carter C. White, Law Office of Joe Richard Flores, P.C., Austin, for appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

STONE, Justice.

Cox & Smith, Inc. ("Cox & Smith ") appeals from an adverse judgment in a suit alleging retaliatory discharge brought under the Texas Commission on Human Rights Act ("TCHRA"). Because the evidence is legally and factually insufficient to establish that Cox & Smith's former employee, Mary Catherine Cook, reasonably believed the challenged conduct constituted unlawful employment practices, we reverse the trial court's judgment awarding damages to Cook and render judgment that Cook take nothing.

## FACTUAL AND PROCEDURAL BACKGROUND

Mary Catherine Cook served as the Business Development Coordinator for the law firm of Cox & Smith from 1989 until she was terminated on January 10, 1994. Cook's supervisor was George Casbeer, Cox & Smith's Executive Director. Casbeer's supervisor was Dan Webster, Managing Director of Cox & Smith. Cook and Casbeer had a difficult working relationship, with frequent disagreements and confrontations. Cook often complained to Webster about her difficult working relationship with Casbeer and reported the substance of their confrontations to Webster.

In January 1994, Cook complained to Casbeer regarding several recent actions by him that she perceived to circumvent her authority and undermine her ability to perform her job. When the meeting turned confrontational, Webster was called in to mediate. Webster terminated Cook's employment within a week of this meeting, stating to Cook that she was being terminated due to irreconcilable differences and personality conflicts with Casbeer.

Cook sued Cox & Smith and four of its employees, including Casbeer. Cook brought suit under the TCHRA alleging sexual harassment, age and sex discrimination, intentional infliction of emotional distress, and retaliation for opposing actions that she deemed to be sexual in nature. All claims except Cook's allegation of retaliatory termination by Cox & Smith were dismissed through summary judgment.

At trial, Cook testified that during the course of her employment, she reported several incidents of Casbeer's conduct to Webster. Cook's alleged reports of these events formed the basis of her retaliatory discharge suit against Cox & Smith. These incidents, as taken from Cook's testimony, are as follows:

1) **Joke told at a wedding:** At the wedding of a co-worker in May 1993, Casbeer looked at Cook, and "in a very, very vicious tone ... said, 'Do you know why they have outlawed short skirts in Washington D.C.?'" Upon another co-worker's prompting, Casbeer replied, "because Hillary Clinton's balls would hang out." Cook testified that she reported the joke to Webster in October 1993, five months after the wedding.

2) **Reference to Hillary Clinton:** In August 1993, Casbeer, "in the middle of [an] innocuous conversation, under his breath gritting his teeth, [said] 'You and Hillary Clinton are two of a kind. I can see the two of you hanging out together.'" Cook testified that she reported this comment to Webster in October 1993.

3) **Reference to Clinton Campaign:** In March of 1993, Casbeer walked into Cook's office and suggested that she quit her job and go to work for the Clinton campaign. Cook described Casbeer's conduct as "harassing." Cook complained to Webster the following day.

4) **Outing at Dick's Last Resort:** Cook, Casbeer, and Dorothy Pieper went to dinner at Dick's Last Resort one evening. While they were there, Casbeer said to Cook "[your former supervisor] always talks about your breasts. We thought you and he were hiding the salami." Although there is conflicting testimony as to when the outing occurred, Cook testified that she reported this comment to Webster in the fall of 1992.

5) **Association of Legal Administrators (ALA) Newsletter:** In October 1993, the ALA profiled Casbeer in its newsletter. In the profile, Casbeer stated that what he "dislike[s] most in a person" is a "bitchy attitude." In October 1993, Cook complained of the comment to Webster as embarrassing to the firm. Cook admitted at trial that the comment was not directed at her and that she did not consider it to be a sexual comment directed at her.

Following trial on the retaliatory termination claim, the jury found that Cook was terminated because she opposed a discriminatory practice. The trial court entered judgment on the jury's verdict and its assessment of the related damages. The trial court

then awarded front pay as an equitable remedy, and awarded costs, including expert witness fees and attorney's fees. Cox & Smith's motion for new trial was denied, and this appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In its first two points of error, Cox & Smith challenges the legal and factual sufficiency of the evidence to support the jury's finding that Cox & Smith violated the TCHRA.

### Standard of Review

When reviewing a legal sufficiency point, this court considers only the evidence favorable to the decision of the trier of fact and disregards all evidence and inferences to the contrary. *See Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support the finding, the no evidence challenge must fail. *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). In considering a factual sufficiency point, this court must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Under this analysis of the case, even if conflicting evidence which could support a different conclusion exists, the court may not pass upon the credibility of witnesses or substitute its judgment for that of the trier of fact. *See Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

### Burden of Proof

The parties dispute the burdens of proof required of each party in a TCHRA case, against which this court must measure the sufficiency of the evidence. Cox & Smith asserts that "[i]t is now widely recognized that Texas courts should evaluate plaintiff's claims ... using the burden-shifting analysis" developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this standard, Cox & Smith argues that Cook was first required to establish a prima facie case of retaliation. If she did so, Cox & Smith argues that the burden of production shifted to Cox & Smith to articulate a legitimate nondiscriminatory reason for Cook's termination. By articulating such a legitimate nondiscriminatory reason—Cook's inability to work with Casbeer—the burden shifted to Cook to show that the proffered reason for her termination was "pretext for discrimination" and that unlawful discrimination was the real reason.

Cook argues that the *McDonnell Douglas* evidentiary framework does not apply to a TCHRA case which "has been fully tried on the merits." Instead, Cook argues that this court must look only at the question whether she produced sufficient evidence for a jury to find that Cox & Smith intentionally discriminated against Cook. As such, Cook contends that "this court's review of the sufficiency of the evidence in the present appeal is no different than any other appeal from a jury verdict."

In *McDonnell Douglas*, the United States Supreme Court prescribed a burden-shifting analysis in Title VII employment discrimination cases. *See McDonnell Douglas*, 411 U.S. at 801–06, 93 S.Ct. 1817. The court allocated to the employee the burden of establishing a prima facie case of unlawful discrimination. *Id.* at 802, 93 S.Ct. 1817. If the employee satisfies this burden, the employer then has the burden of production to articulate some legitimate reason for its actions. *Id.* at 802–03, 93 S.Ct. 1817. The employee has the burden of production to rebut the employer's evidence by showing that the reasons are false or pretextual. *Id.* at 804–05, 93 S.Ct. 1817. While the burden of production shifts, the burden of persuasion that the employer intentionally discriminated against the employee remains always with the employee. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Following *McDonnell Douglas* in cases originally tried by bench trial, the Supreme Court further explained and confirmed the application of the burden-shifting framework in cases tried

on the merits. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–10, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. The Texas Supreme Court adopted this evidentiary framework for review of employment discrimination cases tried on the merits. *See, e.g., Department of Human Servs. v. Hinds,* 904 S.W.2d 629, 636 (Tex.1995) (comparing burden-shifting analysis in employment discrimination cases with that under the Whistleblower statute). In addition, other Texas courts of appeals have reviewed legal sufficiency challenges under this burden-shifting evidentiary framework in similar TCHRA cases tried on the merits. *See, e.g., Austin State Hosp. v. Kitchen,* 903 S.W.2d 83, 90–91 (Tex.App.—Austin 1995, no writ); *Trico Technologies Corp. v. Rodriguez,* 907 S.W.2d 650, 652–53 (Tex.App.—Corpus Christi 1995, no writ); *Adams v. Valley Federal Credit Union,* 848 S.W.2d 182, 186 (Tex.App.—Corpus Christi 1992, writ denied).

However, Cook urges this court to follow recent Fifth Circuit decisions, which hold that "when a case has been tried on the merits, a reviewing appellate court need not address the sufficiency of plaintiff's prima facie case, and may instead proceed directly to the ultimate question of whether plaintiff has produced sufficient evidence for a jury to find that discrimination has occurred." *Harrington v. Harris,* 118 F.3d 359, 367 (5th Cir.1997)(quoting *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 122 (5th Cir.1992)); *see also Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 564–66 (5th Cir.1983). In *Elliott,* the court held that when a case has been tried on the merits, "the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is of no consequence." *Elliott,* 714 F.2d at 564. The court held that in its determination of sufficiency of the evidence when a case has been tried on its merits, the reviewing court should focus only on the employee's burden of persuasion: whether the employer intentionally discriminated against the employee. *Id.*[1]

■ Because the United States Supreme Court, the Texas Supreme Court, and other Texas courts of appeals have reviewed employment discrimination cases tried on their merits using the *McDonnell Douglas* evidentiary framework, we reject Cook's argument that this court should follow the Fifth Circuit in our review of the sufficiency of the evidence. Texas courts may look to federal civil rights law to interpret cases brought under the TCHRA to effectuate the TCHRA's purpose of providing "for the execution of the policies of Title VII." *See Mayberry v. Texas Dep't of Agric.,* 948 S.W.2d 312, 315 n. 2 (Tex.App.—Austin 1997, writ denied); *City of Austin v. Gifford,* 824 S.W.2d 735, 739 (Tex.App.—Austin 1992, no writ). However, this court should adopt analogous federal law only in the absence of precedential Texas caselaw. *See Davenport v. Garcia,* 834 S.W.2d 4, 20 (Tex.1992). Accordingly, we will review the sufficiency of the evidence challenges using the *McDonnell Douglas* burden-shifting analysis in this employment discrimination case tried on its merits.

### 1) Prima Facie Elements of Retaliation Claim

■ Under the *McDonnell Douglas* framework, Cook had the initial burden of establishing a prima facie case of unlawful discrimination. The parties dispute what is required to prove the first prong of the prima facie elements of a retaliation claim brought under the TCHRA and whether this court must assess the evidence according to the jury charge given or against a hypothetically correct jury charge.

■ The elements of a TCHRA retaliation claim are: (1) the employee engaged in a protected activity, (2) the employer took adverse employment action against the employee, and (3) the employer took the adverse action based on the employee's engagement in the protected activity. *See Mayberry,* 948 S.W.2d at 315. The TCHRA protects an employee from retaliation or discrimination by an employer because the employee "opposed a discriminatory practice." TEX. LAB.

---

1. In *Elliott,* the court went on to analyze the sufficiency of the evidence under the *McDonnell Douglas* framework because the parties briefed their contentions relating to that argument using the burden-shifting framework. *See Elliott,* 714 F.2d at 565–66.

CODE ANN. § 21.055(1) (Vernon 1996). Therefore, opposition to a discriminatory practice is a protected activity under the TCHRA. *See id.* Under the first prong, to establish that the employee opposed a discriminatory practice, the employee must demonstrate a good faith reasonable belief that the underlying discriminatory practice of the employer violated the law. *See Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140–41 (5th Cir.1981). The employee is not required to show that there was actual existence of an unlawful practice, only that she held a good faith reasonable belief that the employer engaged in activity made unlawful by Title VII or the TCHRA. *Id.* Second, the employee must demonstrate that she reported the challenged activity to the employer.

While the parties do not dispute that the alleged underlying discriminatory practice that Cook allegedly opposed in this case was sexual harassment, made unlawful under Title VII, the parties dispute what is required to demonstrate a good faith reasonable belief that Cox & Smith engaged in the underlying discriminatory practice. The definition of "opposition to discriminatory practice" provided in the jury charge, over Cook's objection, makes this court's review of this dispute problematic.

■ The jury charge omitted any instruction on the shifting burden of production and did not instruct the jury that Cook was required to demonstrate a good faith reasonable belief that the underlying challenged action violated the law to establish that she opposed a discriminatory practice. The jury charge merely instructed the jury that the term " '[o]pposition to a discriminatory practice' in this lawsuit means that Plaintiff must have complained of conduct or comments of a sexual nature that were so severe as to be sexually intimidating, sexually ridiculing and sexually insulting." The jury charge further explained that "[o]pposition to a discriminatory practice" does not include (1) complaints of everyday insults or vulgarity; (2) complaints of comments or conduct that is non-sexual in nature; or (3) complaints of isolated incidents of conduct or comments, even if they are sexual in nature,

as long as they are not sexually intimidating, sexually ridiculing, and sexually insulting. This definition of "opposition to a discriminatory practice" submitted to the jury actually mirrors the elements of a sexual harassment that must be affirmatively proven in a discrimination claim. *See, e.g., Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993)(sexually discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII); *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)(conduct under Title VII that may be actionable as sexual harassment includes "verbal or physical conduct of a sexual nature [that] has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment"). Similarly, actionable sexual harassment does not include a single incident or a few isolated instances of offensive sexual conduct or remarks. *See Jones v. Flagship Int'l,* 793 F.2d 714, 720 (5th Cir.1986). Because Cook had to show only a reasonable belief of unlawful conduct to establish the prima facie elements of a retaliation claim, this definition in the jury charge placed on Cook a higher burden of proof than required.

The parties dispute whether this court should measure the sufficiency of the evidence against the jury charge or against a hypothetical one that correctly defines the appropriate burden of proof. Cox & Smith argues that the record lacks any evidence that Cook opposed a discriminatory practice, as defined in the jury charge. Cook argues that any failure to satisfy the higher burden "did not cause an improper verdict, as there was ample evidence of conduct she complained about which a reasonable person could believe constituted sexual harassment."

■ Even if this court determined that the trial court committed error by improperly charging the jury, such error would not be reversible because the party disadvantaged by the error prevailed. As such, it cannot logically be determined that any er-

ror led to the rendition of an improper verdict. However, it is also illogical to bind a party disadvantaged by an improper jury charge submitted over proper objection to the same improper jury charge on an appeal which challenges the sufficiency of the evidence.

This court need not decide this issue at this time, however, due to the ultimate resolution of the legal sufficiency challenge. Assuming without deciding that the sufficiency of the evidence should be reviewed according to an appropriate jury charge, one instilling the lower burden of proof, we find the evidence legally insufficient to support the jury's findings. To reach the legal sufficiency review, we must also assume that implicit in the jury's finding under the given jury charge is a finding that Cook had a reasonable belief that Cox & Smith engaged in an unlawful discriminatory practice.

Relying on Fifth Circuit authority regarding what a reasonable person could find to be sexual harassment, Cox & Smith argues that, as a matter of law, Cook could not have reasonably believed that Casbeer engaged in a "discriminatory practice," as defined in the jury charge, based on the five instances reported. To determine whether Cook reasonably believed that Cox & Smith engaged in discriminatory activity, Cox & Smith contends that "reasonable belief" should be determined in the context of " 'reasonableness' under the common law negligence action by deciding how the average individual faced with similar facts and circumstances would act." Because Cook admitted in testimony that the comment from the ALA newsletter and the reference to working for the Clinton campaign were not sexual in nature, Cox & Smith contends these incidents could not serve as basis for the jury's verdict. Cox & Smith contends that "it would seem incredible that any reasonable person could find the reference to Hillary Clinton to be a sexual comment, much less a sexually harassing comment." Finally, Cox & Smith argues that even if Cook reasonably believed that Cox & Smith was engaged in discriminatory activity, there is no evidence that Cook conveyed her reasonable belief to Webster or any other Cox & Smith representative and,

therefore, she cannot be found to have opposed a discriminatory practice under the TCHRA.

Cook contends that she was not required to show that the conduct she opposed was in fact a violation of the TCHRA. Cook argues that instances of verbal sexual harassment which do not give rise to a discrimination claim can nonetheless serve as the basis for a retaliation claim. Cook contends that "Cox & Smith confuses the evidentiary standards in discrimination and retaliation cases and attempts to bootstrap the more stringent standards for proving sexual harassment into the retaliation context." Citing *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307 (7th Cir.1989), as authority on the "reasonable belief" standard, Cook contends that, assuming the conduct she reported did not constitute actionable sexual harassment, it is the type of conduct that under some circumstances would support such a charge. Cook contends that she met her prima facie burden of proof.

■ Although courts apply the "reasonable belief" standard in employment discrimination cases based on retaliation, the term remains undefined and unexplained in this context. *See Long v. Eastfield College*, 88 F.3d 300, 310 (5th Cir.1996)(DeMoss, J., concurring; explaining the need to "make clear" the test for the reasonable belief element). The term is defined in Black's Law Dictionary in relation to tortious conduct to mean, "the actor believes that a given fact or combination of facts exists, and that the circumstances which he knows, or should know, are such as to cause a reasonable man to believe." BLACK'S LAW DICTIONARY 1265 (6th ed.1990). It stands to reason that the term "reasonable belief" retains this generally accepted legal interpretation within the context of an employment discrimination claim. In accordance with this definition, the Eleventh Circuit has explained the test further, to include both subjective and objective components. *See Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997). The court explained that "[a] plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful

employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Id.* (emphasis in original). Incorporating these guiding principles, this court will evaluate Cook's claim by reviewing the evidence consistent with the jury's verdict to determine whether it supports a finding that the circumstances of Cook's employment environment caused her to believe in good faith that Cox & Smith engaged in an unlawful employment practice. In addition, we will review the same evidence to determine whether it supports a finding that this belief was objectively reasonable in light of the circumstances presented, i.e., such as to cause a reasonable person to believe that Cox & Smith engaged in sexual harassment.

## 2) Challenged Conduct

### ALA Newsletter

▮ Cook testified that the comment in the ALA newsletter was not sexual in nature and was not directed at her, rather, it was "a poor reflection on the firm." Cook testified that her complaint to Webster about the comment was "a sexual complaint" because she was offended by the use of the word "bitchy." This incident cannot support a finding that Cook held a reasonable belief that Cox & Smith engaged in unlawful sexual harassment. The comment admittedly was not directed at Cook and was not sexual in nature and, therefore, could not be perceived in good faith to be sexual harassment. Although Cook characterized her complaint to Webster as a "sexual complaint," this belief is not objectively reasonable in light of the circumstances presented.

### Reference to Clinton Campaign

▮ Cook testified that Casbeer's comment to her that she should quit her job and "go work for the Clinton Campaign" was "harassing." However, given the nature of this comment, it cannot support a finding that Cook held a reasonable belief that Cox & Smith engaged in sexual harassment. Although Cook characterized the comment as "harassing," the circumstances would not lead a person to perceive in good faith that the act constituted sexual harassment. In addition, such a belief is not objectively reasonable.

### Reference to Hillary Clinton

▮ Cook testified that Casbeer said, "in the middle of [an] innocuous conversation, under his breath gritting his teeth, 'You and Hillary Clinton are two of a kind. I can see the two of you hanging out together.'" Cook testified that she "absolutely" considered this comment to be sexual in nature. Because this comment referred to a benign association with Hillary Clinton and occurred in the middle of an "innocuous" conversation, the record does not support a jury finding that Cook held a good faith belief that Casbeer engaged in unlawful sexual harassment by making such a comment. Nor do these facts support a finding that any such belief was reasonable.

### Joke at a Wedding

▮ Cook testified that at the wedding of a co-worker, Casbeer looked at Cook, and "in a very, very vicious tone ... said, 'Do you know why they have outlawed short skirts in Washington D.C.?'" Upon another co-worker's prompting, Casbeer replied, "because Hillary Clinton's balls would hang out." Cook testified that she considered this joke to be sexual in nature and perceived the joke to be directed at her. This joke was told to Cook in a social setting, away from work, and in the context of a group. Although this joke may have been offensive to Cook, the telling of this inappropriate, mean, or offensive joke cannot be the basis for a reasonable belief that Casbeer engaged in an unlawful discriminatory practice by telling it. Therefore, there is no evidence in the record that supports a jury's finding that the telling of this joke caused Cook to reasonably believe that Casbeer engaged in sexual harassment by telling it.

### "Salami" comment at Dick's Last Resort

▮ Cook testified that at a social outing away from work, Casbeer said to Cook "[your former supervisor] always talks about your breasts. We thought you and he were hiding the salami." The comment was an

isolated incident that occurred in a social setting. Although this comment was inappropriate and held an offensive sexual connotation, this alone does not support the jury's finding that the comment caused Cook to believe in good faith that Casbeer engaged in sexual harassment by making it, or that such a belief was objectively reasonable. *See Little,* 103 F.3d at 960 (holding that no rational jury could find that Little's belief was objectively reasonable because he never voiced his concern regarding a discriminatory practice and reported a single incident over eight months after it occurred).

Viewing these five incidents as a whole, they do not support a jury's finding that together they caused Cook to believe in good faith that Casbeer engaged in sexual harassment by effecting them or that any such belief would have been objectively reasonable. The only comments that were sexual in nature, the joke and the "salami" remark, offer tenuous support for Cook's belief that Cox & Smith, through Casbeer, engaged in sexual harassment because the remarks were made in social settings during non-work hours. *See id.* In light of the facts in this case, we conclude that the jury's finding that Cook reasonably believed that the five instances cited constituted unlawful sexual harassment is implausible. The record does not support a jury finding that Cook satisfied her burden of proof under the first prong of the *McDonnell Douglas* analysis: proof of the prima facie elements of a retaliation claim. Given the disposition of Cox & Smith's legal sufficiency challenge, we also find that the evidence is factually insufficient to support the jury's finding.

## EXCLUSION OF MEDICAL EVIDENCE

The trial court excluded medical evidence Cox & Smith sought to offer through Cook's psychiatrist of fifteen years, Dr. William Donovan. The trial court excluded evidence of Dr. Donovan's consultations with Cook prior to January 1, 1991. Cox & Smith argues that exclusion of this evidence was harmful because it was relevant to several elements of the submitted liability issue and its exclusion prevented a fair determination

whether Cook's termination was caused by opposition to a discriminatory practice.

Based on our disposition of the first two points of error, we need not reach this issue.

## RECOVERY OF ATTORNEY FEES

The TCHRA provides that "the court may allow the prevailing party, other than the commission, a reasonable attorney's fee as part of the costs." TEX. LAB.CODE ANN. § 21.259 (Vernon 1996).

After the trial ended and the jury was discharged, Cook filed a motion for attorney's fees supported by affidavits from her attorneys attesting to $262,025 in reasonable fees. Cox & Smith filed a response, including a controverting affidavit pointing out inadequacies in Cook's proof and opining that the fees were excessive. The trial court rendered judgment that Cook receive $125,-000 for reasonable attorney's fees.

Cox & Smith argues that the trial court erred by awarding Cook attorney fees because: (1) the issue should have been submitted to the jury; (2) nothing in the record supports the trial court's finding that Cox & Smith agreed to submit this issue to the court rather than to the jury; and, (3) the evidence is legally insufficient to support a judgment for attorney fees

In accordance with our disposition of the first two points of error, the trial court's award of attorney fees is erroneous because Cook is not the prevailing party.

## AWARD OF FRONT PAY

■ Based on a "finding that a respondent engaged in an unlawful employment practice as alleged in a complaint, a court may ... order additional equitable relief as may be appropriate." TEX. LAB.CODE ANN. § 21.258(a)(2) (Vernon 1996). Under the TCHRA, front pay is available as equitable relief in lieu of reinstatement. *See City of Austin,* 824 S.W.2d at 743–44.

The trial court awarded Cook front pay, finding that she was diligent in mitigating her damages, but nonetheless earned less income following her termination by Cox & Smith. The court found that under the circumstances, reinstatement was not feasible.

The court awarded front pay of $90,000 based on lost wages of $25,536 per year. The court determined that the termination would have a five-year negative effect.

In accordance with our disposition of the first two points of error, the trial court's award of this equitable relief is erroneous because the evidence is insufficient to show that Cox & Smith "engaged in an unlawful employment practice as alleged in a complaint."

## DISCOVERY SANCTIONS

■ Prior to trial, Cox & Smith obtained a temporary restraining order (TRO) against Cook and her attorney, Tim Mahoney, requiring them to return all documents wrongfully appropriated from the law firm. Cook withheld the documents under a claim of attorney-client privilege. Mahoney attempted to have the TRO modified, but was denied. Mahoney then unsuccessfully sought mandamus review of the TRO. Cox & Smith sought sanctions because Cook and Mahoney refused to produce the required documents, failed to appear for a deposition, and caused subpoenas to be served directly on two defendants. The trial court awarded monetary sanctions to Cox & Smith and its lawyers. Cook appeals the issuance of this discovery sanction by cross-point.

Cox & Smith asserts that its notice of limited appeal filed pursuant to former TEX. R.APP. P. 40(a)(4)[2] precludes consideration of Cook's cross-point because the basis of Cook's cross-point was a severable portion of the appealed judgment. Because Cook did not perfect her own appeal, Cox & Smith contends that she cannot challenge a pecuniary sanction. Cox & Smith contends that the severability of Cook's claims from the judgment is irrelevant because under the rules and caselaw severability is a consideration only with regard to the appellant's designated issues. Because Cook's claim of retaliatory discrimination could have been brought as a separate suit, Cox & Smith argues that its notice of appeal apprised Cook that she

would have to file an independent appeal if she desired to complain about the discovery sanction.

Cook contends that her appeal is not precluded as outside the limitation of appeal. Cook argues that under TEX.R. CIV. P. 215(3), a discovery sanction order "shall be subject to review from the final judgment." Because a discovery sanctions order could not exist apart from its underlying judgment, Cook contends that it is not subject to limitation of appeal.

■ TEX.R.APP. P. 40(a)(4) permits an appellant to limit the appeal to a severable portion of the trial court's judgment. Rule 40(a)(4) requires that the portion of the judgment to which appellant wishes to limit his appeal be definitely severable, and that notice of a limitation of appeal be served on all parties. TEX.R.APP. P. 40(a)(4); *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 639 (Tex.1989). The term "severable" means a cause could have been brought as a separate lawsuit. *See Cannon v. ICO Tubular Servs., Inc.*, 905 S.W.2d 380, 390 (Tex. App.—Houston [1st Dist.] 1995, no writ). Severance divides a law suit into two or more independent causes, each of which terminates in a separate, final, and enforceable judgment. *See Kansas Univ. Endowment Ass'n v. King*, 162 Tex. 599, 350 S.W.2d 11, 19 (1961).

■ Unless an appellant limits the appeal pursuant to Rule 40(a)(4), an appellee may raise by cross-point any error in the trial court "as between appellant and appellee" without perfecting an independent appeal. *See Donwerth*, 775 S.W.2d at 639. "An appeal cannot be limited where the issues for review call the entire controversy into question, such as a no evidence or insufficient evidence point of error." *Cannon*, 905 S.W.2d at 390. However, this rule is not absolute and applies to the situation when an appellant attempts to limit the appeal to a particular portion of the trial court's findings, rather than a separate cause of action. *See*

---

**2.** *Because this appeal was perfected prior to September 1, 1997, the effective date of the amended Rules of Appellate Procedure, the former rules apply. See Order of Final Approval, in* the Supreme Court of Texas, §§ 2,3 (Aug. 15, 1997). Accordingly, all references to TEX.R.APP. P. 40(a)(4) refer to the former rule.

*id.; see also Tapiador v. North Am. Lloyds of Texas,* 772 S.W.2d 954, 955 (Tex.App.—Houston [1st Dist.] 1989, no writ). The fact that an appellant challenges the evidence based upon legal and factual insufficiency does not always defeat his ability to limit the appeal. *See Carpenter & Assoc. v. Nater Invs., N.V.,* 738 S.W.2d 351, 353–54 (Tex. App.—Austin 1987, writ denied).

In its notice of appeal, Cox & Smith stated that it appealed "the portions of the June 28, 1996 judgment awarding plaintiff Mary Catherine Cook judgment and recovery against Cox & Smith Incorporated on plaintiff's claim that she was terminated because she opposed a discriminatory practice, including the decretal portions of the judgment numbered 1 through 7." Cook did not perfect her own appeal.

Cox & Smith clearly limited its appeal pursuant to Rule 40(a)(4). Although Cox & Smith appealed all detrimental portions of the trial court's judgment on the jury verdict and raised legal and factual sufficiency evidentiary challenges on appeal, the judgment is plainly severable from the pretrial discovery sanction order. Cook's cross-point relates to a discovery sanction ordered prior to trial. The merits of any appeal from the discovery sanction order are separate and distinct from and unrelated to Cox & Smith's appeal from the merits of the judgment on the jury verdict. Although Cook could not appeal the discovery sanction until final judgment in the case was entered, this does not make the two rulings inseverable. As the party adversely affected by the sanction, it is only possible that Cook appeal the issuance of the sanction order as an appellant. Because the parties are not similarly aligned in each ruling, and Cook could have appealed the sanction order even if Cox & Smith did not appeal, Cook's cause could have been brought as a separate lawsuit. By limiting its appeal, Cox & Smith required Cook to assert her complaint from the issuance of discovery sanctions in an independent appeal. Because Cook failed to perfect her own appeal, her cross-point cannot be entertained and is dismissed for want of jurisdiction.

The judgment of the trial court awarding damages to appellee, Mary Catherine Cook, is reversed, and judgment is rendered that Cook take nothing.