NUMBER 13-04-310-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

OPEL WILTSHIRE,                                                                          Appellant,

 

                                                             v.                                

 

HUMPAL PHYSICAL THERAPY, P.C.,                                          Appellee.

 

      On
appeal from the 319th District Court of Nueces County, Texas.

 

 

                               MEMORANDUM
OPINION

 

                          Before
Justices Yañez, Castillo and Garza 

                            Memorandum
Opinion by Justice Garza

 








In this reverse discrimination case, appellant, Opel
Wiltshire, appeals a summary judgment granted in favor of appellee, Humpal
Physical Therapy, P.C.[1]  Wiltshire generally contends the trial court
erred in granting Humpal=s motion for summary judgment.  We affirm the judgment of the trial granting
Humpal=s no-evidence motion for summary judgment, and
reverse that portion of the judgment awarding attorney=s fees. 








Wiltshire was employed by Humpal as a technician in
February of 1999.  Subsequently, Humpal
enacted a policy prohibiting the use of nail polish of unprofessional
colors.  On September 16, 1999, Wiltshire=s supervisor, Russel Hanks, orally informed
Wiltshire and other employees of the new policy.  On September 17, Wiltshire received a written
memorandum informing her that the new policy prohibited the use of nail polish
of unprofessional colors at work, and was advised that she should remove her
neon green polish before returning to work.[2]  On September 20, Wiltshire came to work still
wearing neon green nail polish.  Hanks
confronted Wiltshire and told her she must change the nail color before
returning to work the next day.  The
following day, Wiltshire again came to work wearing the green nail polish.  Hanks asked her to leave the clinic for the
day.  Subsequently, Wiltshire called the
owner of the company, Scott Humpal, to question him regarding the rationale for
the policy.  Hanks terminated Wiltshire
the following day stating as his reasons insubordination and failure to comply
with the company=s nail polish policy.           Wiltshire
filed claims with the Corpus Christi Human Rights Commission and the Equal
Employment Opportunity Commission, alleging violations of the Texas Commission
on Human Rights Act (ATCHRA@).  On June
13, 2000, Wiltshire filed suit alleging causes of action for race
discrimination, hostile work environment, retaliation and intentional
infliction of emotional distress.  Humpal
filed a no-evidence motion for summary judgment and a traditional motion for
summary judgment.  Wiltshire filed one
response to both motions.  Without
specifying its grounds, the trial court granted Humpal=s summary judgment on all of Wiltshire=s claims. 
This appeal ensued.

We review the decision to grant or deny a summary
judgment motion de novo.  See
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994).  Where, as in this case, the trial court does
not state the specific grounds upon which the summary judgment was granted, the
reviewing court must consider whether any theories set forth in the motion will
support a summary judgment.  State
Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).  A summary judgment must be affirmed if any of
the theories advanced by the movant are meritorious.  Id.

In a traditional summary judgment, the movant must
establish that no genuine issue of material fact exists as to at least one
element of the non‑movant=s claim and that the movant is entitled to judgment
as a matter of law. See Tex. R.
Civ. P. 166a(c); Cate v. Dover Corp., 790 S.W.2d 559, 562 (Tex.
1990).  All doubts about the existence of
a genuine issue of a material fact are resolved against the movant.  Cate, 790 S.W.2d at 562; see also Acker
v. Texas Water Comm'n, 790 S.W.2d 299, 301‑02 (Tex. 1990). 








In a no‑evidence motion for summary judgment,
the burden is on the non‑movant to present evidence raising a genuine
issue of material fact in support of the challenged elements.  Smith v. Mossbacker, 94 S.W.3d 292, 294
(Tex. App.BCorpus Christi 2002, no pet.). As in traditional
summary judgments, the evidence is viewed in the light most favorable to the
non‑movant, disregarding all contrary evidence and inferences, and if
there is Amore than a scintilla of probative evidence to raise
a genuine issue of material fact,@ then the no‑evidence summary judgment should
not be granted.  See Tex. R. Civ. P. 166a(i); see also
Zapata v. The Children=s Clinic,
997 S.W.2d 745, 747 (Tex. App.BCorpus Christi 1999, pet. denied).  When the evidence offered to prove a vital
fact is so weak as to do no more than create a mere surmise or suspicion of its
existence, the evidence is no more than a scintilla and, in legal effect, is no
evidence.  Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983). 

In support of her response to Humpal=s motion for summary judgment, Wiltshire attached
the following evidence: excerpts from her own testimony via deposition and affidavit,
excerpts from Hanks= deposition, and a copy of the charge of
discrimination filed with the Corpus Christi Human Relations Commission (Athe charge@).  We first
review the no-evidence motion for summary judgment.  Accordingly, we review this evidence to
determine whether it rises to more than a scintilla of probative evidence on
the elements challenged by Humpal.  See
id.

Jurisdiction








One of the TCHRA=s
purposes is correlation of state law with federal law in the area of
discrimination in employment.  Schroeder
v. Tex. Iron Works, Inc., 813 S.W.2d 483, 485 (Tex. 1991).[3]  Like Title VII, its federal counterpart, the
TCHRA prohibits an employer from discriminating against an individual with
respect to compensation, or the terms, conditions, or privileges of employment
because of race, color, disability, religion, sex, and national origin.  See Tex.
Lab. Code Ann. ' 21.051 (Vernon 1996); see also 42 U.S.C.A. ' 2000e‑2 (West 1994).  The TCHRA established the Texas Commission on
Human Rights (TCHR) as the state Adeferral agency@ to investigate and resolve employment
discrimination claims.  See Schroeder,
813 S.W.2d at 485.  

The Texas Supreme Court has held that exhausting the
administrative remedies outlined in the TCHRA is a mandatory prerequisite to
filing a civil action alleging a violation of the TCHRA.  See Schroeder, 813 S.W.2d at 485.  In order to comply with this exhaustion
requirement, an employee must: (1) file a complaint with the TCHR within 180
days of the alleged discriminatory act; (2) allow the TCHR to dismiss the
complaint or resolve the complaint within 180 days before filing suit; and (3)
file suit no later than two years after the complaint is filed.  See Tex.
Lab. Code Ann. '' 21.201‑.202, .208, .256 (Vernon 1996).  The TCHR shall inform the complainant of the
dismissal or failure to resolve the complaint in writing by certified mail.  Tex.
Lab. Code Ann. ' 21.208.








A complaint filed with the EEOC, and forwarded by
the EEOC to the TCHR, satisfies the requirements of the TCHRA.  Price v. Philadelphia Am. Ins. Co.,
934 S.W.2d 771, 774 (Tex. App.BHouston [14th Dist.] 1996, no writ).  A complaint must state: (1) that an unlawful
employment practice has been committed; (2) the facts on which the complaint is
based, including the date, place, and circumstances of the alleged unlawful
employment practice; and (3) facts sufficient to enable the TCHR to identify
the respondent.  Tex. Lab. Code Ann. ' 21.201(c). 
The complainant may bring a civil action against the respondent within
sixty days after the date a notice of the right to file a civil action is
received from the TCHR.  See Tex. Lab. Code Ann. ' 21.254 (Vernon 1996).  A lawsuit under this section is limited to
the complaints made in the discrimination charge and factually related claims
that could reasonably be expected to grow out of the Commission=s investigation of the charge.  Thomas v. Clayton Williams Energy, Inc.,
2 S.W.3d 734, 738 (Tex. App.BHouston [14th Dist.] 1999, no pet.).  

In its no-evidence motion for summary judgment,
Humpal argued that Wiltshire=s claims are jurisdictionally barred because there
was no evidence that she (1) filed her claim within the requisite 180-day
period, and (2) exhausted her administrative remedies.  See Tex.
Lab. Code Ann. ' 21.202.  On
appeal, Humpal also contends that Wiltshire=s
failure to include her TCHR right-to-sue letter in the appellate record amounts
to no evidence that she exhausted her administrative remedies in the TCHR
before filing suit.  See Tex. Lab. Code Ann. ' 21.252 (Vernon 1996).  Humpal also argued in its motion that
Wiltshire=s original complaint to the Corpus Christi Human
Relations Commission did not mention any specific occurrence of racial
discrimination or hostile environment.[4]  However, on appeal, Humpal now argues that
Wiltshire=s complaint should be limited to the claims of
reverse discrimination and hostile work environment, and should not include
claims for retaliation or denial of opportunities for advancement because these
claims were not included in her EEOC charge.[5]  








Wiltshire=s summary judgment evidence reflects that on
September 28, 1999, she filed her charge with the Corpus Christi Human
Relations Commission and the EEOC.  The
EEOC forwarded her charge to the TCHR pursuant to a AWorksharing Agreement.@  See Davis v. Educ. Serv. Ctr., 62
S.W.3d 890, 892 n.3 (Tex. AppBTexarkana 2001, ).[6]  In her complaint, Wiltshire specifically
alleged race discrimination and noted that the alleged discrimination took
place on September 22, 1999.[7]  She claimed she was terminated on that same
date after she was Asubjected to a hostile work environment which
included be [sic] referred to by racially discriminatory names such as >bolea [sic].=@[8]  Wiltshire
claimed that Hanks dismissed her because he did not approve of her phone call
to Scott Humpal.  Wiltshire=s claim, which was filed September 28, alleged the
date of discrimination as being September 22. 
The TCHRA requires that A[a] complaint under this subchapter must be filed
not later than the 180th day after the date the alleged unlawful employment
practice occurred.@  See Tex. Lab. Code Ann. ' 21.202. 
Wiltshire=s complaint was clearly within the requisite 180-day
period.            








Humpal further contends in its no-evidence motion
for summary judgment, that Wiltshire=s failure to include her TCHR right-to-sue letter in
the appellate record amounts to no evidence that she exhausted her
administrative remedies in the TCHR before filing suit.  See Tex.
Lab. Code Ann. ' 21.252. 
However, mere possession of a right‑to‑sue letter is not
mandatory before filing suit.  See Tex. Lab. Code Ann. ' 21.252 (providing that failure to issue the notice
of a complainant=s right to file a civil action does not affect the
complainant=s right to bring a civil action).  As the Fourteenth Court so aptly stated:

 

A complainant (who has received notice of dismissal
or failure to resolve) is entitled to request the letter. The executive
director mayBbut does not have toBissue
it.  And, the failure to issue the letter
does not impact the complainant's right to sue.

 

***

 

We conclude that it is the entitlement to the right‑to‑sue
letter that exhausts the complainant's administrative remedies. The statute
certainly supports an interpretation that the right‑to‑sue letter
is notice of exhaustion, not actually part of exhaustion.

 

City of Houston v. Fletcher, 63 S.W.3d 920, 923 (Tex. App.BHouston [14th Dist.] 2002, no pet.); see also
Rice v. Russell-Stanley, L.P., (Tex. App.BWaco
2004, pet. denied) (holding that because receipt of a right‑to‑sue
letter is merely notice of the exhaustion of remedies and does not constitute
part of actually exhausting administrative remedies, the trial court erred in
granting summary judgment on this basis). 
We agree that the right‑to‑sue letter is not required to
satisfy the exhaustion requirement, but rather, that it constitutes notice of
exhaustion.      

The charge indicates claims for unlawful employment
practices including race  discrimination
and hostile work environment.  Whether
these claims are properly before us is no longer an issue as Humpal now agrees
that these claims were raised in Wiltshire=s charge.  On
appeal, Humpal contends that Wiltshire=s claim for retaliation should not be considered because
it was not included in her EEOC charge.  








While retaliation was not one of the causes of
discrimination checked in the charge, Wiltshire=s
statement on the charge contends that she was fired because AI made a phone call to the owner and my supervisor
objected.@  From this
statement, it is reasonable to conclude that she is claiming some form of
retaliation.  This claim is one that
could reasonably be expected to grow out of the Commission=s investigation of the charge (i.e., that she
was fired because she called in a complaint). 
See Thomas, 2 S.W.3d at 738.  

We conclude that Wiltshire produced evidence
demonstrating that she properly exhausted her administrative remedies and that
the trial court had jurisdiction to consider her claims for race
discrimination, hostile work environment and retaliation.  Accordingly, lack of jurisdiction was not a
ground upon which summary judgment could have been granted.

Retaliation

 








Humpal also moved for no-evidence summary judgment
claiming that Wiltshire failed to produce evidence establishing a prima facie
case of retaliation.  Wiltshire=s petition alleged that Humpal retaliated against
her in violation of section 21.055 of the labor code.  See Tex.
Lab. Code Ann. ' 21.055 (Vernon 1996).  In order to establish a prima facie case of
retaliation, Wiltshire must prove that (1) she engaged in a protected activity,
(2) Humpal took some unlawful employment action against her, and (3) Humpal=s unlawful 
employment action was due to her engagement in the protected
activity.  Mayberry v. Texas Dep=t of Agric.,
948 S.W.2d 312, 315 (Tex. App.BAustin 1997, pet. denied).  The labor code sets forth four broad
categories of protected activities. 
Section 21.055 provides that an employer commits an unlawful employment
practice if the employer retaliates or discriminates against a person who: (1)
opposes a discriminatory practice; (2) makes or files a charge; (3) files a
complaint; or (4) testifies, assists, or participates in any manner in an
investigation, proceeding, or hearing.  Tex. Lab. Code Ann. ' 21.055.  To
establish that the employee opposed a discriminatory practice, the employee
must demonstrate a good faith reasonable belief that the underlying
discriminatory practice of the employer violated the law.  Cox & Smith, Inc. v. Cook, 974
S.W.2d 217, 224 (Tex. App.BSan Antonio 1998, pet. denied).  An employee=s
subjective belief is not competent summary judgment evidence.  M.D. Anderson Hosp. and Tumor Inst. v.
Willrich, 28 S.W.3d 22, 25 (Tex. 2000). 
Second, the employee must demonstrate that she reported the challenged
activity to the employer.  Cox &
Smith, 974 S.W.2d at 224.

In its no-evidence motion for summary judgment,
Humpal alleged that Wiltshire could not establish elements one and three
because her phone call to Scott to complain about Humpal=s policy regarding nail polish color does not
qualify as engaging in a statutorily protected activity under the TCHRA.  Humpal argues that, because she was not
engaged in a statutorily protected activity, there is not and cannot be
evidence that Wiltshire=s termination was due to her engagement in any
allegedly protected activity.  Humpal
contended that even when evidence in Wiltshire=s
favor is taken as true and all inferences are indulged in her favor, Wiltshire
cannot establish that she was engaged in a protected activity or that Humpal
terminated Wiltshire because of her alleged engagement in the protected
activity.  We agree.








            In her response to Humpal=s motion for summary judgment, Wiltshire alleged
that the protected activity was her complaint about the racial slurs made by her
co-workers rather than her complaints about the nail polish policy.[9]  Wiltshire claimed in the EEOC charge that she
was terminated after she Amade a phone call to the owner and [Hanks] objected.@  Wiltshire=s evidence includes one conclusory statement in
which Wiltshire says she believes her termination was in retaliation for
calling Scott and because she made a lot of complaints about being picked on in
the office.  Even if we accept this
statement favorably to Wiltshire, her summary judgment evidence falls short of
establishing that Humpal=s decision to terminate her employment was based on
her complaints. See Purcell v. Bellinger, 940 S.W.2d 599, 602 (Tex.
1997) (finding that conclusory statements that are unsupported by facts are not
proper summary judgment proof). 
Wiltshire=s deposition testimony, which she attached as
evidence in her response, reflects that she called Scott because she wanted to
inquire about the reasons for the new policy on nail polish color.  Wiltshire stated AI didn=t understand what the pointBwhat the reasoning for my nail color had to do with
my ability to do my job.@  Wiltshire
also admits in her deposition that she did not discuss the alleged name-calling
with Scott during this conversation.  

Based on Wiltshire=s
summary judgment evidence, we conclude that the phone call to Scott was related
to the nail polish policy and had nothing to do with any alleged discriminatory
practice. Therefore, there is no evidence that Wiltshire engaged in any
protected activity or that her termination was due to her engagement in any
protected activity.  Summary judgment
was, therefore, proper on this cause of action.      

 

 








Race Discrimination

 

Wiltshire also alleged she was treated differently
because of her race.  Wiltshire alleged
discrimination in violation of section 21.051 of the labor code.  See Tex.
Lab. Code Ann. ' 21.051(1).  








An employer may not discriminate against its
employees because of race.  See id.  In discrimination cases that have not been
fully tried on the merits, we apply the burden‑shifting analysis
established by the United States Supreme Court. 
See Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex.
2003) (per curiam) (citations omitted). 
Under the burden-shifting test, the plaintiff must first establish a
prima facie case of discrimination.  See
McDonnel Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  To meet this burden, a plaintiff must show
(1) she was a member of a protected class, (2) she suffered an adverse
employment action, and (3) non-protected employees were not treated
similarly.  See Greathouse v. Alvin
Indep. Sch. Dist., 17 S.W.3d 419, 423 (Tex. App.BHouston [1st Dist.] 2000, no pet.).  This burden is not onerous.  See Tex. Dept. of Cmty. Affairs v. Burdine,
450 U.S. 248, 254 (1981).  The prima
facie case Araises an inference of discrimination only because
we presume these acts, if otherwise unexplained, are more likely than not based
on the consideration of impermissible factors.@  Id. at 255.  Once the plaintiff establishes a prima facie
case, the burden of production then shifts to the employer to articulate
legitimate, non-discriminatory reasons for any alleged unequal treatment.  McDonnel, 411 U.S. at 803; Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 477 (Tex. 2001).  The offer of a legitimate reason eliminates
the presumption of discrimination created by the plaintiff=s prima facie case. 
Burdine, 450 U.S. at 256. 
The burden then shifts back to the plaintiff to show the employer=s stated reason was a pretext for
discrimination.  Quantum Chem., 47
S.W.2d at 477.  The plaintiff retains the
burden of persuasion to prove by a preponderance of the evidence she was
discriminated against because of her race. 
See Burdine, 450 U.S.at 254. 
Also, subjective beliefs of discrimination alone are insufficient to
establish a prima facie case.  See
Montgomery v. Trinity I.S.D., 809 F.2d 1058, 1061 (5th Cir. 1987); Hornsby
v. Conoco, Inc., 777 F.2d 243, 246‑47 (5th Cir. 1985).

            In its no-evidence motion for summary
judgment, Humpal claimed (1) Wiltshire could not establish a prima facie case
because there was no evidence that she was treated differently on account of
her race, (2) there was no evidence establishing a causal connection between
her discharge for insubordination and her race, (3) it had a legitimate
nondiscriminatory reason for terminating Wiltshire, and (4) Wiltshire could not
establish pretext.  Humpal challenged the
last element of Wiltshire=s prima facie case in its motion for summary
judgment.  Thus, our first inquiry is
whether Wiltshire was treated differently than similarly situated Hispanic
employees.  We must determine whether
Wiltshire met her burden to present more than a scintilla of probative evidence
to establish this element of her prima facie case. 








To meet this burden, appellant makes a single conclusory
statement: AIn the past, other Hispanic female staff members
have placed calls to Mr. Humpal directly and never got fired or written up.@[10]  Wiltshire
was required to produce more than a scintilla of evidence establishing that the
Hispanic employees were treated differently than she was.  However, Wiltshire did not produce any
summary judgement evidence with respect to the circumstances under which the
Hispanic employees called Scott, either with regard to the subject matter of
the telephone calls, their duration or frequency, or any other information from
which a determination could be made that the Hispanic employees were evenly
situated or treated differently than Wiltshire. 
Wiltshire actually testified that she had no personal knowledge of the
nature or subject matter of the alleged telephone calls made by the Hispanic
employees.  Other than the above
statement, Wiltshire does not direct this Court to any evidence to show she was
similarly situated with these Hispanic employees such that Humpal=s failure to terminate all of them for making phone
calls to Scott raises the inference she was terminated because of her
race.  We conclude Wiltshire has failed
to raise a fact issue by showing Humpal failed to terminate all of the Hispanic
employees who also phoned Scott.  








If we assume, arguendo, that Wiltshire established a
prima facie case that Humpal=s termination was racially motivated, the burden
would then shift to Humpal to prove legitimate, non‑discriminatory
reasons for any alleged unequal treatment. 
Here, the record shows Wiltshire was terminated for her refusal to
comply with the nail polish color policy. 
Moreover, her deposition testimony also concedes that she was informed
of the new policy and refused to comply. 
The burden of production would then shift back to Wiltshire to show that
the reason proffered by Humpal was a pretext to race discrimination.  Wiltshire=s
evidence is Aso weak as to do no more than create a mere surmise
or suspicion of a fact.@  See
Kindred, 650 S.W.2d at 63.  Wiltshire
brings forward no evidence that implementation and enforcement of the nail
polish policy was a pretext for discriminating against her.  Thus, Wiltshire has failed to establish a
claim of race discrimination. 
Accordingly, summary judgment was properly granted on this ground. 

Hostile Work Environment

 

Humpal also moved for summary judgment on Wiltshire=s hostile work environment claim. To establish a
prima facie case of hostile work environment, Wiltshire had to show that (1)
she belongs to a protected group; (2) she was subjected to unwelcome
harassment; (3) the harassment complained of was based on race; (4) the
harassment complained of affected a term, condition, or privilege of employment;
and (5) the employer knew or should have known of the harassment in question
and failed to take prompt remedial action. 
Ewald v. Wornick Family Foods Corp., 878 S.W.2d 653, 659 (Tex.
App.BCorpus Christi 1994, writ denied).  

Wiltshire alleged that she was referred to as a Abolia@ by three Hispanic co-workers in the office.  For workplace comments to provide sufficient
evidence of discrimination, those comments must be (1) related to plaintiff=s protected class; (2) proximate in time to the
adverse employment decision; (3) made by an individual with authority over the
employment decision at issue; and (4) related to the employment decision at
issue.  Elgaghil v. Tarrant County
Junior College, 45 S.W.3d 133, 140 (Tex. App.BFort
Worth 2000, pet. denied).  AStray remarks made in the workplace by non-decision
makers, without more, are not evidence of the employer=s intent to discriminate.@ Id.








Wiltshire=s summary judgment evidence amounts to mere
conclusory statements.  In her affidavit
and deposition, she testified that her co-workers referred to her as a Abolia@ beginning around May of 1999.  She claims the use of the term Agrew with increasing frequency@ to almost daily around the time of her
termination.  However, Wiltshire opines
that the term Abolia@ is offensive and derogatory, but does not describe
the context in which the term was used except to state that Ait was a joke with them.@  Wiltshire
provided no evidence that this so-called harassment Aaffected a term, condition, or privilege of
employment,@ an element necessary for her prima facie case.  Additionally, she provided no evidence that
the use of the term Abolia@ was by an individual with authority over the
employment decision or that it related to her termination.  Accordingly, summary judgment was properly
granted on this cause of action.

Intentional Infliction of
Emotional Distress

 

To establish her claim of intentional infliction of
emotional distress, Wiltshire had to produce evidence that (1) Humpal acted
intentionally or recklessly, (2) its conduct was extreme and outrageous, and
(3) its actions caused the plaintiff severe emotional distress.  Twyman v. Twyman, 855 S.W.2d 619, 621
(Tex. 1993).  It is well settled that a
plaintiff must show that the defendant=s A[o]utrageous conduct is that which goes beyond all
possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized society.@  Wornick
Co. v. Casas, 856 S.W.2d 732, 734 (Tex. 1993).

Wiltshire=s entire argument in response to Humpal=s no-evidence motion for summary judgment is: APlaintiff endured nearly five months of constant
racial hostilities.  No one should be
expected to tolerate this protracted verbal assault.  If this is not outrageous then the protection
of the law is an illusion.@  However,
Wiltshire did not produce any evidence that could even arguably come close to
meeting the requisite elements.  Summary
judgment was proper on this cause of action.

Attorney=s Fees and Costs

 








On appeal, Wiltshire contends that the trial court
erred by awarding attorney=s fees under section 21.259 of the labor code
because it did not make any finding that her claim was frivolous, unreasonable,
or groundless.  See Tex. Lab. Code Ann. ' 21.259(a) (Vernon 1996); see also Christiansburg
Garment Co. v. Equal Employment Opportunity Comm=n, 434
U.S. 412, 414 (1978).  Wiltshire also
contends that the trial court=s denial of Humpal=s
motion for sanctions under rule 13 evidences a finding that her claims were not
groundless, frivolous, or brought in bad faith, as the motion for sanctions
sought attorney=s fees on those grounds.  See Tex.
R. Civ. P. 13.  We review a trial
court=s award of attorney=s fees
under section 21.259 for abuse of discretion. 
Greathouse v. Glidden, 40 S.W.3d 560, 571 (Tex. App.BHouston [14th Dist.] 2001, no pet.).  A trial court Aabuses
its discretion when it reaches a decision so arbitrary and unreasonable as to
amount to a clear and prejudicial error of law.@  Johnson v. Fourth Court of Appeals, 700
S.W.2d 916, 917 (Tex. 1985).  Findings of
fact are not required in an abuse of discretion review.  Crouch v. Tenneco, Inc., 853 S.W.2d
643, 646 (Tex. App.BWaco 1993, writ denied).  In the absence of findings of fact, a trial
court=s judgment implies all necessary facts required to
support it.  Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990).   

The trial court=s decision to grant Humpal attorney=s fees is based on section 21.259, which provides, Ain a proceeding under this chapter, a court may allow
the prevailing party, other than the commission, a reasonable attorney=s fee as part of the costs.@  Tex. Lab. Code Ann. ' 21.259(a); see Winters v. Chubb &
Son, Inc., 132 S.W.3d 568, 580 (Tex. App.BHouston
[14 Dist.] 2004, no pet.).    








Texas courts of appeals that have addressed attorney=s fees under this provision have followed federal
precedent, under which an employer may recover attorney fees if the plaintiff=s claims were frivolous, meritless, or unreasonable,
or the plaintiff continued to litigate after it became clear that his claim was
frivolous.  See e.g., Elgaghil, 45
S.W.3d at 144-45; Winters, 132 S.W.3d at 580.  Attorney=s fees are not appropriate simply because the
plaintiff loses his case.  Christiansburg, 434 U.S. at 421.  Rather, to show that a lawsuit was without
merit, the defendant must establish that the case was groundless or without
foundation.  Id.  

Rule 13 authorizes a trial court to impose sanctions
against an attorney, a represented party, or both, who file a groundless
pleading brought in bad faith or brought for the purpose of harassment.  Tex. R.
Civ. P. 13.  The rule defines Agroundless@ as having Ano basis in law or fact and not warranted by good
faith argument for the extension, modification, or reversal of existing law.@  Id. 








In its motion for summary judgment, Humpal requested
attorney=s fees and court costs under section 21.259 of the
labor code, claiming that, as the prevailing party, it was entitled to
fees.  See Tex. Lab. Code Ann. ' 21.259.  Subsequently,
Humpal filed a motion for sanctions seeking attorney=s fees pursuant to Texas Rule of Civil Procedure
13.  Tex.
R. Civ. P. 13.  In this motion,
Humpal claimed it was entitled to attorney=s fees because Wiltshire=s claims were groundless and brought in bad faith or
for the purpose of harassment.  Humpal
also filed a motion for costs, arguing that because it had prevailed in its
defense against Wiltshire=s employment discrimination suit, the court should
grant attorney=s fees and courts costs as a matter of law.  In a single order, the trial court denied
Humpal=s motion for sanctions and granted its motion for
costs.  The order stated Ahaving duly considered the Defendant=s Motion for Costs, hereby finds that the motion has
merit and accordingly awards, as court costs, attorney=s fees in the amount of $20,210.48.@  The trial
court further stated that Ahaving further duly considered the Defendant=s Motion for Sanctions, the evidence presented and
the argument of counsel, hereby DENIES the motion.@            

As discussed above, an employer may recover attorney
fees pursuant to section 21.259 if the plaintiff=s
claims were frivolous, meritless, or unreasonable, or the plaintiff continued
to litigate after it became clear that his claim was frivolous.  See Christiansburg, 434 U.S. at 421‑22.  Here, Humpal did not claim itself entitled to
attorney=s fees pursuant to section 21.259 because Wiltshire=s claims were frivolous, meritless, unreasonable or
because Wiltshire continued to litigate after it became clear the claim was
frivolous.  Instead, it merely sought
attorney=s fees because it was the Aprevailing party.@  However, courts interpreting this statute
have held that attorney=s fees are not appropriate simply because the
plaintiff loses his case.  See id.;
Elgaghil, 45 S.W.3d at 145.  To show
that a lawsuit is without merit, the defendant must establish that the case was
groundless or without foundation.  Elgaghil,
45 S.W.3d at 145 (citing Christiansburg, 434 U.S. at 421-22).  Although the trial court was not asked to
consider the frivolousness or merit of Wiltshire=s case
in the motion for costs, Humpal asked the court to do so in its motion for
sanctions.  The trial court specifically
considered Humpal=s argument that Wiltshire=s claims were groundless and brought in bad
faith.  The trial court denied this
motion, impliedly finding that Wiltshire=s claims were not groundless or brought in bad
faith.  Because the trial court awarded
attorney=s fees pursuant to this section based upon a motion
which only alleged entitlement to fees as the prevailing party, and because the
trial court found that Wiltshire=s claims were not groundless or brought in bad
faith, we find the trial court abused its discretion in awarding attorney=s fees to Humpal.  
       








We affirm the judgment of the trial court granting
Humpal=s no-evidence motion for summary judgment, and
reverse that portion of the judgment awarding attorney=s fees.  We
need not review the traditional motion for summary judgment.  See Tex.
R. App. P. 47.1.

 

 

_______________________

DORI CONTRERAS GARZA,

Justice

 

Memorandum Opinion delivered and 

filed this the 31st day of August, 2005.











[1] The United States Supreme Court
has held that Title VII protects an employee from reverse discrimination, that
is, employer discrimination against a member of a historically favored
group.  McDonald v. Santa Fe Trail
Transp. Co., 427 U.S. 273, 280 (1976); see Byers v. Dallas Morning News,
Inc., 209 F.3d 419, 425 (5th Cir. 2000) (holding that an employer=s decision to terminate an
individual=s employment based on race is a
violation of Title VII, regardless of whether that person is white or black).





[2] Humpal suggests in its brief that
the new policy was implemented after Wiltshire=s sister, who was employed by
Humpal=s Corpus Christi clinic, wore neon
green nail polish to work.    





[3] When reviewing an employment
discrimination case brought under Chapter 21, Texas appellate courts look to
analogous federal precedent. See Schroeder v. Tex. Iron Works, Inc., 813
S.W.2d 483, 485 (Tex. 1991).   





[4] Humpal concedes that Wiltshire
later amended her complaint to include claims for racial discrimination and
hostile work environment.  The labor code
provides:  

 

An amendment to a complaint
alleging additional facts that constitute unlawful employment practices
relating to or arising from the subject matter of the original complaint
relates back to the date the complaint was first received by the commission.

 

Tex.
Lab. Code Ann. ' 21.201(f) (Vernon 1996).  As such, we find Humpal=s argument to be without
merit.  Nonetheless, Humpal is now
arguing on appeal that these claims should be considered.





[5] We have reviewed Wiltshire=s live pleading and have found no
claim for denial of opportunities for advancement.  As stated above, the only four claims brought
by Wiltshire include claims for (1) race discrimination, (2) hostile work
environment, (3) intentional infliction of emotional distress, and (4)
retaliation. 





[6] Under a AWorksharing Agreement,@ the EEOC and the TCHR designate
each other as agents for the purpose of receiving complaints.  See Vielma v. Eureka Co., 218 F.3d
458, 462 (5th Cir. 2000).  When a
complainant files an initial charge with the EEOC, the charge is also
considered filed with the TCHR. Id. at 462‑63.  





[7] The EEOC form filled out by
Wiltshire includes a section that states ACause of discrmination based on (Check appropriates
box(es))@ and has the following options:
Race, Color, Sex, Religion, National Origin, Retaliation, Age, Disability,
Other (Specify).  The only box checked on
Wiltshire=s form is ARace.@





[8] ABolia@ is Spanish for Awhite girl.@ 






[9] Specifically, Wiltshire argues
that the Aprotected activity involved her
protest and objection to the Clinic Director, Mr. Russell Hanks, about the
constant racial slurs made by one of several Hispanic co-workers.@





[10] See Purcell v. Bellinger,
940 S.W.2d 599, 602 (Tex. 1997) (finding that conclusory statements that are
unsupported by facts are not proper summary judgment proof).