ACCEPTED
01-15-00541-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/31/2015 1:36:09 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00541-cv

IN THE COURT OF APPEALS
FOR THE FIRST JUDICIAL DISTRICT
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

8/31/2015 1:36:09 PM

CHRISTOPHER A. PRINE
Clerk

# ALBORZ DATAR
*Appellant*

vs.

# NATIONAL OILWELL VARCO, L.P.
*Appellee*

---

## APPELLANT'S BRIEF

---

Nitin Sud
Sud Law P.C.
State Bar No. 24051399
6750 West Loop South
Suite 920
Bellaire, Texas 77401
Phone: 832-623-6420
Fax: 832-304-2552
Email: nsud@sudemploymentlaw.com

*Attorney for Appellant, Alborz Datar*

**ORAL ARGUMENT REQUESTED**

i

## IDENTITY OF PARTIES AND COUNSEL

Alborz Datar ("Datar") – *Plaintiff/Appellant*

Nitin Sud
Sud Law P.C.
6750 West Loop South
Suite 920
Bellaire, TX 77401
*Attorney for Plaintiff/Appellant Datar*

National Oilwell Varco, L.P. ("NOV") – *Defendant/Appellee*

Christopher E. Moore
Christine M. White
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street
Suite 3500
New Orleans, LA 70139
*Attorneys for Defendant/Appellee NOV*

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL …………………………… ii

TABLE OF AUTHORITIES ………………………………….…… v

STATEMENT OF THE CASE ………………………………….…… vii

STATEMENT REGARDING ORAL ARGUMENT …………….……... ix

ISSUES PRESENTED …………………………………………….. ix

SUMMARY OF ARGUMENT …………………………….…… 1

STATEMENT OF FACTS …………………………………… 2

    I.   NOV's Progressive Discipline Policy ………………………… 2
    II.  Datar's Employment …………………………………….. 2
    III. Datar's Complaint of Sexual Harassment …………………….. 3
    IV. Datar's Injury, Disabilities, and Physical Limitations ………… 5
    V.  NOV Fires Datar ………………………………….…… 7
    VI. Mike Henley's Knowledge Regarding Datar's Injury
        and Progressive Discipline Policy …………………………… 8
    VII. NOV's Progressive Discipline Practice Was Not Followed ….. 9

ARGUMENTS …………………………………………………... 9

    I.   Summary Judgment Standard ………………………………… 9

    II.  Disability Discrimination – Failure to Accommodate ………… 10
        A. *Datar has a disability* …………………………………… 10
        B. *NOV had notice of Datar's disability* ……………………… 12
        C. *There is a fact question as to whether NOV refused*
           *to make accommodations for Datar or failed to*
           *engage in an interactive process* ………………………….. 13

    III. TCHRA Retaliation …………………………………... 16
        A. *Datar engaged in a protected activity* …………………….. 16
        B. *NOV has not asserted a legitimate non-discriminatory*
           *reason for terminating Datar* ……………………………… 18

C. *NOV's reason for terminating Datar is pretext for unlawful retaliation* …………………………………………….. 18

IV.   Workers' Compensation Retaliation …………………………….. 21

PRAYER ……………………………………………………..... 23

CERTIFICATE OF WORD COMPLIANCE ………………………… 24

CERTIFICATE OF SERVICE …………………………………… 24

APPENDIX INDEX ……………………………………………… 25

**Cases**

*Bell v. Conopco, Inc.*,
  186 F.3d 1099 (8th Cir. 1999) …………………………………….. 19

*Benners v. Blanks Color Imaging, Inc.*,
  133 S.W.3d 364 (Tex. App. – Dallas 2004, no pet.) ……………….… 21

*Butler v. La. Dep't of Pub. Safety & Corr.*,
  2013 U.S. Dist. LEXIS 76467 (M.D. La. May 29, 2013) ……………. 15

*Chhim v. University of Houston*,
  76 S.W.3d 210 (Tex. App. – Texarkana 2002, pet. denied) …………. 21

*City of Waco v. Lopez*,
  259 S.W.3d 147 (Tex. 2008) ……………………………………. 16

*Cont'l Coffee Prods. Co. v. Cazarez*,
  937 S.W.2d 444 (Tex. 1996) ……………………………………… 22

*Cox & Smith Inc.* 974 S.W.2d 217
  (Tex. App. – San Antonio 1998, pet. denied) ……………………….. 16, 17

*Duhon v. Bone & Joint Physical Therapy Clinics*,
  947 S.W.2d 316 (Tex. App.-Beaumont 1997, no writ) ………………. 21

*Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*,
  778 F.3d 473 (5th Cir. 2015) ……………………………………. 13

*Evans v. City of Houston*,
  246 F.3d 344 (5th Cir. 2001) ……………………………………. 20

*Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*,
  730 F.3d 450 (5th Cir. 2013) ……………………………………. 19

*Fort Brown Villas III Condo. Assoc., Inc. v. Gillenwater*,
  285 S.W.3d 879 (Tex. 2009) ……………………………………. 9

*Garrett v. Constar Inc.*,
   1999 U.S. Dist. LEXIS 9361, (N.D. Tex. May 25, 1999) …………… 20

*Gonzalez v. Tex. HHS Comm'n*,
   U.S. Dist. LEXIS 161706 (W.D. Tex. Nov. 19, 2014) ……………… 12

*Hovorka v. Cmty. Health Sys. Inc.*,
   262 S.W.3d 503 (Tex. App. – El Paso 2008, no pet.) ……………….. 10

*Johnson v. City of Houston*,
   203 S.W.3d 7 (Tex. App. – Houston [14th Dist.] 2006, pet. denied) … 22

*Limestone v. Prods. Distrib., Inc. v. McNamara*,
   71 S.W. 3d 308 (Tex. 2002) ……………………………………….. 9

*Machinchick v. PB Power, Inc.*,
   398 F.3d 345 (5th Cir. 2005) ……………………………………… 19

*Miles-Hickman v. David Powers Homes, Inc.*,
   613 F. Supp. 2d 872 (S.D. Tex. 2009) ………………………………. 20

*Modjeska v. UPS*,
   2014 U.S. Dist. LEXIS 148363 (E.D. Wisc. Oct. 16, 2014) ………… 11

*Molina v. DSI Renal, Inc.*,
   840 F. Supp. 2d 984 (W.D. Tex. 2011) ………………………………. 11

*Nelson v. Regions Mortg., Inc.*,
   170 S.W.3d 858 (Tex. App. – Dallas 2005, no pet.) ……………..… 10

*Parker v. Valerus Compression Servs., LP*,
   365 S.W.3d 61 (Tex. App. – Houston [1st Dist.] 2011, pet. denied) … 22

*Rhines v. Salinas Constr. Techs., Ltd.*,
   2012 U.S. Dist. LEXIS 110457 (S.D. Tex.  Aug. 7, 2012) ………….. 20

*St. Mary's Honor Center v. Hicks*,
   209 U.S. 502 (1993) ……………………………………………….. 19

*Summers v. Altarum Inst., Corp.*,

740 F.3d 325 (4th Cir. 2014) ……………………………….… 11

*Taylor v. Principal Fin. Group*,
      93 F.3d 155 (5th Cir. 1996) ………………………………….. 14

*Terry v. S. Floral Co.*,
      927 S.W.2d 254 (Tex. App. – Houston [1st Dist.] 1996, no writ) …… 21

*Tex. Dep't of Family & Protective Servs. v. Howard*,
      429 S.W.3d 782 (Tex. App. – Dallas 2014, pet. denied) ……………... 10

*Tex. Div.-Tranter v. Carrozza*,
      876 S.W.2d, 312 (Tex. 1994) ……………………………………….. 10

*Turner v. Health Care Serv. Corp.*,
      2009 U.S. Dist. LEXIS 37331 (N.D. Ill. May 4, 2009) ……………… 13

*Young v. McCarthy-Bush Corp.*,
      2014 U.S. Dist. LEXIS 38084 (N.D. Ga. Mar. 24, 2014) ……………. 11

## Statutes

Tex. Lab. Code Ann. § 451.001 ………………………………………... 21

Tex. Lab. Code § 21.002(6) ………………………………………….. 11

Tex. Lab. Code § 21.002(11-a) ………………………………....… 11

Tex. R. Civ. P. 166a(c) ……………………………………………... 9

Tex. R. Civ. P. 199.2(b)(1) ……………………………………………. 2, 7

## STATEMENT OF THE CASE

On February 3, 2014, Datar brought this suit against NOV alleging disability discrimination (failure to accommodate) under the Texas Commission on Human Rights Act ("TCHRA"), retaliation for requesting a disability accommodation under TCHRA, retaliation for making a complaint of sexual harassment under TCHRA, and workers' compensation retaliation under the Texas Workers' Compensation Act. CR6-12. Datar voluntarily dismissed the disability retaliation claim on February 11, 2015. CR30-32. Datar moved for a partial summary judgment seeking a ruling that he has a disability and that NOV was aware of his disability. CR33-38. On March 9, 2015, NOV moved for traditional summary judgment on the three remaining claims as well as no-evidence summary judgment for the workers' compensation retaliation claim. CR146-172. Datar responded on March 30, 2015. CR364-380. The district court granted NOV's summary judgment motions on April 29, 2015. CR566. This is an appeal from that decision.

## STATEMENT REGARDING ORAL ARGUMENT

Datar respectfully requests that the Court grant oral argument so that the parties may accordingly apprise the Court of the legal and factual issues particular to this case, and answer any questions the Court may have.

## ISSUES PRESENTED

1) Did the trial court err by granting summary judgment for NOV on Datar's claim for disability discrimination – failure to accommodate, under the Texas Commission on Human Rights Act?

2) Did the trial court err by granting summary judgment for NOV on Datar's claim for retaliation under the Texas Commission on Human Rights Act?

3) Did the trial court err by granting summary judgment for NOV on Datar's claim for workers' compensation retaliation under the Texas Workers' Compensation Act?

## SUMMARY OF ARGUMENT

This is a failure to accommodate and wrongful termination case under Chapter 21 of the Texas Labor Code and the Texas Workers' Compensation Act. Datar worked for NOV for five years, most of that time as a welder. Datar did not have any poor performance evaluations, warnings, or write-ups. In fact he was praised and given a raise in February 2013. Only a few months later, in May 2013, Datar was injured at work, accordingly obtained workers' compensation benefits, and sought disability-related accommodations. Also, that same month, he made a complaint of sexual harassment, which was acknowledged and investigated by NOV. NOV refused any accommodations and fired him on June 3, 2013, one business day after it completed its investigation into his harassment complaint and literally minutes after he returned from getting an MRI related to his workplace injury. During the termination meeting Datar indicated his ongoing willingness to work, and his immediate supervisor later admitted that he could have continued working rather than be terminated. Furthermore, NOV did not follow its company-wide progressive discipline policy, as it has with other similarly situated employees. As a result, the district court erred in granting summary judgment, as there are fact issues that a jury should resolve.

1

I.   NOV's Progressive Discipline Policy

NOV has an unwritten progressive discipline policy/practice that provides for a verbal, written, and final warning prior to termination. CR451, 535. As acknowledged by NOV's corporate representative who provided Rule 199.2(b)(1) testimony relating to NOV's progressive discipline practices and policies (CR447), **the progressive discipline practice is applied uniformly throughout NOV**. CR452. *See* TEX. R. CIV. P. 199.2(b)(1). It applies to employees who are insubordinate. CR453.[1] NOV has in fact applied this progressive discipline practice to other employees for various reasons, including "insubordination." CR481-488. As explained further below, this policy was not applied to Datar who was ultimately accused of insubordination.

II.  Datar's Employment

Datar was employed as a welder for NOV for several years. Datar's job duties consisted of actual welding and preparing to weld, including rigging, cutting and grinding metal, and using a forklift to move parts. CR400, ¶2. Datar reported to Jesus Rangel and received direction from him. CR394, 405, 407-408, 422-423. On February 8, 2013, Datar received a 13% pay raise and specific written praise that he

---

[1] In extreme situations, the progressive discipline may not be applied, such as with respect to physical threats and stealing. CR453. However, Datar never engaged in such extreme actions. CR453-454.

has proven to be a valuable asset to NOV over the past 4.66 years with NOV through his dedication to the company and his willingness to increase his welding qualifications. This employee has continually demonstrated to be well aligned with NOV's values in the areas of quality, production, safety, and integrity. Additionally, in reviewing quality of work for Al Datar over the past 12 months there were no Non Conformance Reports found.

CR461-462. Datar had never received any verbal or written warnings, and he had never been disciplined prior to his termination. CR493-496.

Relevant employees were as follows: a) Jose Fuentes was a welder and then "lead man" assigned to the day shift, b) Jesus Rangel was Datar's supervisor and weld shop supervisor, c) Jerred Sullivan was the facility manager and HSE manager (CR417-418; 428), d) Mistie Moore was the human resources supervisor (CR432); d) Mike Henley was the Senior Repair Manager/Offshore of the Bammel facility (CR442); and Lon Allchin was the Senior Human Resources Manager (CR450).

III.   Datar's Complaint of Sexual Harassment

NOV's sexual harassment policy that was provided to Datar specifically describes sexual harassment as including "[u]nnecessary touching of an individual." CR541.

In May 2013, Datar made a complaint to human resources against Fuentes for, in part, trying to pull down his pants. Datar considered that to be a form of sexual harassment. CR 389-390. Prior to making the complaint to human

3

resources, Datar mentioned it to Rangel, who directly stated to Datar that he didn't want anybody to "lose their job" over Datar's complaint. CR395-396.

Moore was the human resources representative who handled Datar's complaint of harassment. Throughout her employment with NOV, Moore has only conducted one harassment-related investigation (specifically the one related to Datar). CR433, 435. Moore has never been aware of any other complaint of harassment within NOV. CR434. However, on July 16, 2013, Moore testified under oath to the TWC that she had "conducted several investigations" since investigating Datar's complaint. CR522. That turned out to be a false statement.

Moore concedes that Datar's complaint was that "he felt like he was being sexually harassed…." CR436. Moore indicated on a written "Internal Investigation Worksheet" that Datar's complaint involved "sexual harassment." CR438, 464. **Moore agreed that Datar's complaint was made in good faith**. CR439.

During her investigation, Moore discussed Datar's complaint with Henley. CR437. Furthermore, also during the investigation, Mike Shaffer (another manager) specifically discussed the investigation with Moore, expressing concerns as to whether there was potential "for a case" and hoping there was no "validity to the concerns" expressed by Datar. CR479.

On Friday May 31, 2013 Datar had a meeting with Moore and Henley in which Moore told Datar he would have to work under Fuentes. CR388. Datar

4

stated that he did not want to work under Fuentes partly because he felt uncomfortable working under somebody that harassed him. CR389.

Furthermore, because Datar reported to and received direction directly from Rangel, it was strange to require Datar to report to Fuentes. Datar performed his job as a welder before and after Fuentes became a lead man. CR397-398. There was no need for Datar to take direction from a lead man. CR398. The weld shop supervisor, Rangel, oversaw the entire weld shop without a lead man for at least two consecutive years and would still oversee it even when he wasn't present in the weld shop. CR404, 406. There is no lead man job description. CR501. Notably, Rangel admitted that Datar could have actually worked in his regular day shift welder job without reporting to Fuentes and "received instructions directly from" Rangel. CR412-414.

IV.    Datar's Injury, Disabilities, and Physical Limitations

Datar has two medical conditions that substantially limit major life activities. He has a lower back pain that makes it difficult for him to sit down, pick things up, and walk. CR383-384. Datar also has hypertension (or high blood pressure), for which he takes medication. CR385-386. This condition affects his ability to do his job by limiting the number of hours he can work. CR386. It also causes him to get dizzy, tired, light-headed, and feel weak. CR400, ¶3.

5

Throughout his employment with NOV, Datar would repeatedly ask Rangel for time off due to his hypertension so that he could rest. CR387. Rangel admitted that he was aware that Datar had high blood pressure. CR408. Rangel was also aware that Datar injured his back in May 2013 and asked for accommodations. CR409-411. Rangel completed an incident report referencing Datar's back injury. CR466-469. Sullivan was also aware of Datar's back injury. CR421.

NOV provided no training to Sullivan relating to the ADA. CR419. However, part of Sullivan's job duties is to comply with all NOV procedures and policies. CR420, 428. Sullivan incorrectly believes that taking time off from work cannot be an accommodation for a workplace injury. CR425. He also admitted that "the Bammel facility does not offer accommodating modified duty for non-work related injuries," essentially acknowledging that NOV does not comply with the ADA. CR424, 426. Furthermore, former NOV employee, Fabian Martinez Salinas, acknowledges that there were often situations where he witnessed Sullivan immediately denying employees' requests for accommodations without NOV engaging in an interactive process. CR459, ¶5.

On Monday, May 20, 2013, Datar asked for time off the following Sunday and Monday (Memorial Day weekend) as an accommodation to rest. CR400, ¶6. Rangel refused to grant him the time off. *Id*. Sullivan also admits that Rangel

specifically stated to Datar "I don't have to accommodate you." CR68-69, 426. NOV did not offer any alternatives to Datar's request for time off. CR400, ¶6.

Therefore, Datar was scheduled to work during the Sunday and Monday of Memorial Day weekend in May 2013 (May 26th and 27th). *Id.* However, he actually called-in sick the morning of Sunday May 26, 2013 because he went to the emergency room. CR506-509, 543, ¶4. Therefore, had Datar not gone to the emergency room, he would have been forced to work.

NOV's corporate representative admitted that he has no facts to support Datar not having a disability. CR455. He also had no facts to support NOV's position that Datar did not seek a reasonable accommodation. CR456-457. This is notable because NOV asserted these issues as affirmative defenses (CR360, ¶¶ 3, 5) and the corporate representative was to testify regarding all facts supporting NOV's affirmative defenses under Rule 199.2(b)(1) of the Texas Rules of Civil Procedure. CR447.

V.  NOV Fires Datar

On Monday morning June 3, 2013, Datar first went to get an MRI done related to his back injury. CR543, ¶2. He then returned to NOV and continued his meeting with Moore and Henley; however, this time, Rangel and Allchin were also attending the meeting for unknown reasons. CR391-392. Moore again requested that Datar agree to take Fuentes as his lead man, which Datar refused. CR393.

Moore then informed Datar he was being terminated for refusing to do his job; however, **Datar specifically stated to Moore that he has no problem doing his job**. *Id.* Nevertheless, he was still fired.

Furthermore, **Rangel admits that had Datar not been terminated, Datar could have actually worked in his regular day shift welder job without reporting to Fuentes and "received instructions directly from" Rangel**. CR412-414. Datar acknowledges he could work in his position as a day shift welder reporting solely to Rangel, rather than having to take any direction from Fuentes. CR543, ¶3. Furthermore, Datar could have also been placed on the night shift and completely avoided Fuentes. CR413. Despite these options and Datar's willingness to perform his job duties, NOV still fired him.

VI. Mike Henley's Knowledge Regarding Datar's Injury and Progressive Discipline Policy

Henley was aware that Datar had a doctor's appointment the morning of June 3, 2013, before the meeting in which he was terminated. CR443. Henley was specifically informed, **in writing on two occasions** (on May 13, 2013 and again on May 20, 2013), that Datar had been injured. CR470-474. Datar did receive workers' compensation benefits. CR476-477.

Henley acknowledges that NOV has a progressive discipline practice. CR444. He admits that there are situations where an employee may be

insubordinate and not be terminated.  CR445.  Henley has given written warnings to other employees, but not Datar.  CR497.

VII.   NOV's progressive discipline practice was not followed

To emphasize, Datar was never given a write-up or warning, yet was immediately terminated for "insubordination" one business day following the conclusion of the investigation into his harassment complaint and right after he returned from a doctor visit.  There is no dispute that NOV did not follow its own progressive discipline practice, yet treated other employees differently, as described above.  CR451, 447, 452, 453, 481-488, 535.

<strong>ARGUMENTS</strong>

I.   Summary Judgment Standard

Summary judgment is proper when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c).  NOV must show the absence of any genuine issue of material fact, with all doubts resolved in favor of Datar.  *See Limestone v. Prods. Distrib., Inc. v. McNamara*, 71 S.W. 3d 308, 311 (Tex. 2002).  Evidence presented in a summary judgment proceeding must be of the same quality and admissibility as would be admissible in a conventional trial. *Fort Brown Villas III Condo. Assoc., Inc. v. Gillenwater*, 285 S.W.3d 879, 882 (Tex. 2009).   Therefore, conclusory statements, speculation, and subjective beliefs are not proper summary

9

judgment evidence. *Tex. Div.-Tranter v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994); *Hovorka v. Cmty. Health Sys. Inc.*, 262 S.W.3d 503, 511 (Tex. App. – El Paso 2008, no pet.); *Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 865 (Tex. App. – Dallas 2005, no pet.).

II.     Disability Discrimination – Failure to Accommodate

To prove a failure to accommodate claim, a plaintiff must show the following: 1) he has a "disability," 2) the employer had notice of the disability, 3) the plaintiff could perform the "essential functions" of the position with "reasonable accommodations," and 4) the employer refused to make such accommodations. *Tex. Dep't of Family & Protective Servs. v. Howard*, 429 S.W.3d 782, 789 (Tex. App. – Dallas 2014, pet. denied) (citing *Davis v. City of Grapevine*, 188 S.W.3d 748, 758 (Tex. App. – Fort Worth 2006, pet. denied)). NOV moved for summary judgment with respect to the first, second, and fourth elements. It did not argue that Datar could not perform the essential functions of his job as a welder.

A. Datar has a disability

TCHRA defines "disability" as a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment. TEX. LAB.

CODE § 21.002(6). Major life activities include performing manual tasks, sleeping, walking, standing, lifting, bending, and working. TEX. LAB. CODE § 21.002(11-a).

TCHRA "was amended effective September 1, 2009, to reflect amendments to the [Americans with Disabilities Act] pursuant to the ADA Amendments Act of 2008 (ADAAA)." *Molina v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 993 (W.D. Tex. 2011). "Congress amended the ADA to broaden its coverage by expanding the definition of what qualified as a 'disability.'" *Id*. It "expressed its intent that 'the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations,' and 'the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.'" *Id.* (citing 42 U.S.C. § 12102(4)(A)). Therefore, the definition of a disability "shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.'" *Id*.

Employees who suffer from temporary impairments and injuries are sufficient may be considered "disabled" as defined by the Act. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 332 – 33 (4th Cir. 2014); *Modjeska v. UPS*, 2014 U.S. Dist. LEXIS 148363, *34 – 35 (E.D. Wisc. Oct. 16, 2014) (CR98-99); *Young v. McCarthy-Bush Corp.*, 2014 U.S. Dist. LEXIS 38084, *15 (N.D. Ga. Mar. 24, 2014) (stating that the ADAAA "has dispensed with the requirement that

11

courts consider the duration of an impairment when weighing whether it substantially limits a major life activity") (CR81). Courts may rely on a "plaintiff's own statements that his or her condition is substantially limiting." *Gonzalez v. Tex. HHS Comm'n*, No. 5:13-cv-183-DAE, 2014 U.S. Dist. LEXIS 161706, *19 (W.D. Tex. Nov. 19, 2014) (CR107).

As indicated above, there is no dispute that Datar suffered from high blood pressure (or hypertension) and a back injury during the relevant time period. There is also no dispute that these conditions substantially limited major life activities, such as sitting down, picking things up, walking, and limiting the number of hours he can work. Furthermore, NOV's corporate representative admitted that he had no facts to support Datar not having a disability. CR455. Therefore, it should be held, as a matter of law, that Datar was considered disabled as defined under TCHRA.

## B. NOV had notice of Datar's disability

As explained above, Rangel and Sullivan, both managers within NOV, were aware of Datar's back problems, and Rangel was also aware of Datar's high blood pressure. CR56, 57, 59-60, 65. Sullivan even admitted that Rangel specifically stated to Datar that he would not accommodate Datar. CR68-69.

NOV contends that Datar's requests for time off to rest does not put the company on notice that he needs an accommodation. CR160. However, it is

12

established that a request for time off may be a reasonable accommodation. *Turner v. Health Care Serv. Corp.*, 2009 U.S. Dist. LEXIS 37331, \*35 (N.D. Ill. May 4, 2009) (CR553). Notably, Datar's condition prevented him from working long hours, and he needed to rest.

Second, NOV contends Datar's allegations about NOV refusing to accommodate him are insufficient because he could not provide specific details regarding the timing and number of his requests. CR161. However, NOV cannot rely on Datar's inability to pinpoint specific dates/instances for purposes of a summary judgment motion. *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476-77 (5th Cir. 2015) (relying on an affidavit referencing inappropriate comments made "on several occasion"). Therefore, Datar's allegations were not conclusory or otherwise insufficient. Finally, NOV's Rule 199.2(b)(1) corporate representative admitted that he had no facts to support its position that Datar did not seek a reasonable accommodation. CR456-457.

Therefore, it should be held, as a matter of law, that NOV had notice of Datar's disability.

> C. <u>There is a fact question as to whether NOV refused to make accommodations for Datar or failed to engage in an interactive process</u>

NOV argues that Datar was not refused a reasonable accommodation. CR161-162. The basis of Datar's failure to accommodate claim stems from his

May 20, 2013 request to take off work May 26 and 27, 2013. CR543, ¶4. Datar has testified that he was scheduled to work those two days and Rangel refused to grant him that time off or otherwise offer alternatives. "[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one." *Taylor v. Principal Fin. Group*, 93 F.3d 155, 165 (5th Cir. 1996). Therefore, on May 20, 2013, NOV violated the TCHRA by refusing to accommodate Datar's request or otherwise engage in an interactive process to determine whether alternative accommodations could be provided.

It is true that Datar ultimately did not work on May 26 and 27; however, the reason is because he was rushed to the emergency room – not because NOV willingly granted him an accommodation. CR506-509. Datar actually called in sick on Sunday, May 26th because of his medical condition. CR543, ¶4. NOV contends that because Datar ultimately did not work on the two days that he requested to be off, it complied with its disability obligations. CR161-162. That cannot be a method of complying with the ADA or TCHRA. Disability accommodation laws are not designed to unjustly reward an employer if the employee inadvertently stumbles upon the requested accommodation because he was so ill he had to go to the emergency room. As a federal court recently explained:

In a disparate treatment claim, "the ultimate issue is the employer's reasoning at the moment the questioned employment decision is made, [thus] a justification that could not have motivated the employer's decision is not evidence that tends to illuminate the ultimate issue and is therefore simply irrelevant." *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (courts should conduct a snapshot inquiry into the employer's motive at the exact instant the decision was made)); *see also Perez v. Tx. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004) ("The evidence relevant to determining whether [defendant discriminated against plaintiff] is evidence that goes to what [defendant] knew at the time [defendant]… recommended [plaintiff's] termination.").

*Butler v. La. Dep't of Pub. Safety & Corr.*, C.A. No. 3:12-cv-00420-BAJ-RLB, 2013 U.S. Dist. LEXIS 76467, *15 (M.D. La. May 29, 2013). Accordingly, the question here is: Did NOV comply with its obligations to accommodate Datar and/or engage in an interactive process on May 20, 2013? The answer to that question at the summary judgment stage is "no," not only based on Datar's statements, but also on Sullivan's misconception that taking time off from work cannot be an accommodation for a workplace injury (CR425), Sullivan's admission that "the Bammel facility does not offer accommodating modified duty for non-work related injuries" (CR424, 426), and/or Salinas' supporting statements that there were often situations where he witnessed Sullivan immediately denying employees' requests for accommodations without NOV engaging in an interactive process. CR459, ¶5. Therefore, there is a fact question as to whether NOV refused

15

to make accommodations for Datar, and the district court erred when granting summary judgment in favor of NOV.

III.    TCHRA Retaliation

Datar claims he was fired in retaliation for making a complaint of sexual harassment.  NOV makes two primary arguments regarding Datar's TCHRA retaliation claim.  Specifically, it contends that Datar did not engage in a protected activity (CR163-165) and that it had a legitimate, non-retaliatory reason to terminate him for which Datar cannot show pretext.[2]  CR166-168.

A. Datar engaged in a protected activity

Opposition to a discriminatory practice is a protected activity irrespective of the merits of the underlying discrimination claim. *City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008).

NOV argues that Datar did not engage in a protected activity because his internal complaint of sexual harassment was not made based on a good-faith reasonable belief that the conduct was unlawful.  CR163-165.  NOV relies on one case, *Cox & Smith Inc.* 974 S.W.2d 217 (Tex. App. – San Antonio 1998, pet. denied), to assert that Datar's complaint that Fuentes' attempt to pull down his pants could not amount to a good faith, reasonable belief of sexual harassment.

---

[2] NOV included an argument that it did not take an adverse action directly based on Datar's complaint. CR166-167.  This is a circumstantial evidence case, not a direct evidence case, thus requiring the *McDonnell Douglas* standard to apply.  Therefore, it does not appear this argument needs to be addressed as there is no dispute that Datar was terminated.

CR163-165. In that case, there were five alleged incidents that could not be considered a reasonable belief of sexual harassment.[3] Furthermore, the court's analysis in that case actually indicated that it is possible that two of the comments could have been considered sexual harassment, but did not amount to such a level "because the remarks were made in social settings during non-work hours." *Cox & Smith Inc.*, 974 S.W.2d at 227.

Datar's situation is different. His complaint of sexual harassment involved Fuentes attempting to pull his pants down **in the work place and during work hours**. Datar notified his supervisor, Rangel, about the incident and then escalated it to human resources. Given his actions and testimony, Datar reasonably believed that this amounted to sexual harassment.

Furthermore, at all times during NOV's investigation into Datar's complaint of sexual harassment, NOV admitted that it believed Datar's complaint was considered sexual harassment and that it believed (and still believes) Datar made his complaint in good faith. CR436, 438, 439, 464.

Therefore, Datar engaged in a protected activity. In the alternative, there is a fact question on this issue.

---

[3] The incidents alleged by the plaintiff in *Cox & Smith Inc.* were: 1) use of the word "bitchy" in a newsletter; 2) an employee telling her to work for the Clinton campaign; 3) an employee stating that she is similar to Hillary Clinton; 4) a joke told by a co-worker at a wedding (away from the workplace) in front of other people referencing Hillary Clinton; and 5) an isolated comment made by an employee at a social setting (also away from the workplace) referencing the plaintiff's breasts. *Cox & Smith Inc.*, 974 S.W.2d at 226-27.

B. NOV has not asserted a legitimate non-discriminatory reason for terminating Datar

NOV contends it terminated Datar because of insubordination for refusing to do his job. CR167. First of all, there is no dispute that Datar was willing to work as a welder and that NOV believed there were no problems with his performance at least through May 2013. CR393, 461-462, 493-496. Also, Datar could have actually continued working in his exact same position and reported directly to Rangel. CR412-414. This is further supported by the fact that Rangel normally operated without a lead man. CR404, 406. Furthermore, NOV has not produced any welder or lead man job description (nor any other written document) specifically indicating that welders must report to a lead man. CR501. Most importantly, Datar stated to Moore and Henley that he had no problem doing his job, which directly contradicts NOV's position that Datar was refusing to perform his job. CR393. Therefore, NOV has not asserted a legitimate, non-discriminatory reason for Datar's termination.

C. NOV's reason for terminating Datar is pretext for unlawful retaliation

Even if it is determined that NOV has articulated a legitimate non-discriminatory reason for terminating Datar, such an explanation is actually pretext for unlawful discrimination. At this stage, the burden is on Datar to show that the

18

proffered reason was not the true reason for the adverse employment action. *See St. Mary's Honor Center v. Hicks*, 209 U.S. 502, 507-08 (1993).

Therefore, assuming Datar was "insubordinate" by refusing to report to a lead man, he should have been provided with a verbal or written warning, as required by NOV's progressive discipline practice that has been applied to numerous other employees for insubordination and that is supposedly applied uniformly throughout NOV. CR447, 451, 452, 453, 481-488, 535. Other employees who were insubordinate were not immediately terminated, and Henley had applied the progressive discipline policy to such employees. CR444, 445, 497.

Instead, NOV chose to skip this step and immediately terminate him. Therefore, NOV treated Dater differently than other similarly situated employees. This is strong evidence of pretext. *See Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454-55 (5th Cir. 2013) (noting that an "employer's departure from typical policies and procedures" may establish a causal connection between the protected activity and adverse action); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005) (employer's failure to follow its progressive discipline policy in dealing with plaintiff may be evidence of pretext); *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1102 (8th Cir. 1999) (genuine issue of material fact existed in racial discrimination and retaliation actions based on evidence that plaintiff's supervisor did not comply with progressive discipline

19

policy); *Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 884 (S.D. Tex. 2009) (stating that the employer's "failure to abide by its usual progressive discipline policy constitutes circumstantial evidence in support of [the plaintiff's] retaliation claim").

In addition, the extremely short time frame between Datar's complaint of sexual harassment and his termination (less than a month), including the fact that he was fired literally one business day after the conclusion of NOV's harassment investigation, supports a causal connection finding on its own. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (finding that a lapse of five days is sufficient to establish a causal connection); *Rhines v. Salinas Constr. Techs., Ltd.*, 2012 U.S. Dist. LEXIS 110457, *20 (S.D. Tex. Aug. 7, 2012) ("[W]hen an adverse employment action is taken in very close temporal proximity to a protected activity, this may be sufficient evidence of causation, at least for a prima facie case of retaliation.") (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)); *Garrett v. Constar Inc.*, 1999 U.S. Dist. LEXIS 9361, *16-17 (N.D. Tex. May 25, 1999) (finding a time lapse of four months to be sufficient to satisfy the causal connection for summary judgment purposes).

Therefore, even disregarding Datar's affirmative statement during his termination meeting that he was willing to do his job, the temporal proximity between his protected activity and his termination combined with NOV's failure to

20

follow its own disciplinary practice shows that there is a fact question as to whether NOV unlawfully retaliated against Datar. As a result, the district court erred when it granted summary judgment on Datar's TCHRA retaliation claim.

IV.    Workers' Compensation Retaliation

An employer may not discharge an employee because that employee has filed a workers' compensation claim in good faith. *See* TEX. LAB. CODE ANN. § 451.001; *Terry v. S. Floral Co.*, 927 S.W.2d 254, 256-57 (Tex. App. – Houston [1st Dist.] 1996, no writ). To state a prima facie case of workers' compensation retaliation, Datar must show: 1) that he instituted a workers' compensation claim; 2) that an adverse employment action occurred; and 3) that a causal connection exists between the filing of the workers' compensation claim and the adverse employment action. *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369-70 (Tex. App. – Dallas 2004, no pet.). With respect to the first element, Datar only needs to show that he was injured on the job and reported the injury to his employer, not that he actually filed a workers' compensation claim. *Chhim v. University of Houston*, 76 S.W.3d 210, 217-18 (Tex. App. – Texarkana 2002, pet. denied); *Duhon v. Bone & Joint Physical Therapy Clinics*, 947 S.W.2d 316, 317-18 (Tex. App.-Beaumont 1997, no writ) (holding employee invoked protection of statute when she sustained an on-the-job injury and reported it to her employer the next day).

21

There is no dispute that Datar meets the first two elements. NOV only focuses on the third element regarding causal connection. CR169-171.[4] Datar may prove a causal link between his termination and his workers' compensation claim by circumstantial evidence, which includes:

> (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude towards the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.

*Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 67 (Tex. App. – Houston [1st Dist.] 2011, pet. denied). Furthermore, "[l]ittle or no lapse in time between the plaintiff's compensation claim and the employer's adverse employment action is also circumstantial evidence of a retaliatory motive." *Id.*; *Johnson v. City of Houston*, 203 S.W.3d 7, 11 (Tex. App. – Houston [14th Dist.] 2006, pet. denied).

Datar reported his injury on or about May 11, 2013 and he was terminated only three weeks later, June 3, 2013. A workers' compensation report was completed on May 16, 2013. CR476-477. Henley, the manager who made the decision to terminate Datar, was informed **in writing** on May 13, 2013 and again on May 20, 2013 that Datar had been injured. CR170-174. Henley also

---

[4] NOV also moved for a no-evidence summary judgment on this claim. CR155-156. Datar's facts asserted above and arguments in this section accordingly address that argument. Notably, Henley was aware of Datar's injury and need for medical care.

acknowledges that he was aware, on June 3, 2013 (the date NOV fired Datar), that Datar was coming into work immediately following a doctor's appointment. CR443. These admissions alone contradict NOV's argument that Henley was not aware of Datar's injury and/or a workers' compensation claim.

Given Henley's knowledge, the nominal lapse in time between Datar's injury and his termination, and the fact that NOV has a progressive discipline policy that it did not follow when terminating Datar (discussed in more detail above), the district court erred when it granted summary judgment on Datar's workers' compensation retaliation claim.

## PRAYER

Datar respectfully requests that this Court reverse the judgment entered by the district court, and accordingly hold as follows:

1) Datar has a disability, as defined under the TCHRA;

2) NOV had notice of Datar's disability; and

3) The district court erred in granting summary judgment in favor of NOV because there are fact questions on Datar's three claims.

23

## CERTIFICATE OF WORD COMPLIANCE

Under Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the undersigned counsel – in reliance upon the word count of the computer program used to prepare this document – certifies that this brief contains 5,520 words, excluding most of the words that need not be counted under Rule 9.4(i)(1).

## CERTIFICATE OF SERVICE

I hereby certify that a true, full, and correct copy of the foregoing was served on the following counsel of record via email on August 31, 2015.

Christopher E. Moore
Christine M. White
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street
Suite 3500
New Orleans, LA 70139

*/s/ Nitin Sud*_____
Nitin Sud

## APPENDIX INDEX

Court's Order Granting Summary Judgment …………………………….. 1